IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROGER FRANKLIN TURNER,

    Plaintiff,

v.

DUANE M. WALDERA, et al.

    Defendants.

OPINION & ORDER

Case No. 16-cv-384-wmc

*Pro se* plaintiff Roger Franklin Turner filed this lawsuit under 42 U.S.C. § 1983 against Jackson County Sheriff Duane Waldera, Jackson County District Attorney Gerald Fox, and the Black River Falls Memorial Hospital, claiming violations of his constitutional rights arising out of his May 2016 arrest, eight-day detention at the Jackson County Jail and brief hospitalization due to the complications of morphine withdrawal. Now before the court are: (1) Gerald Fox's Motion to Dismiss (dkt. #7); (2) Duane Waldera's Motion for Judgment on the Pleadings (dkt. #21) and related Motion to Strike (dkt. #28); and (3) Black River Falls' Motion for Judgment on the Pleadings (dkt. #21). For the reasons that follow, the court will grant the motions to dismiss and for judgment on the pleadings, deny the motion to strike and direct entry of judgment in defendants' favor.

# ALLEGATIONS OF FACT[1]

## I. Investigation, Arrest and Search

In May of 2016, detectives from Jackson County were investigating Turner and other individuals for a possible, clandestine drug laboratory. Their investigation included interviews of two informants, Rebecca Davis and John Rose. Defendant Duane Waldera apparently learned about the investigation before Turner's subsequent arrest, but nothing suggests that the sheriff was personally involved in the investigation or arrest. The contemporaneous police report included a statement from Jackson County's investigating officer, Dana Schlicht, a supplement provided by Detective Adam Olson and a statement by Detective Nicholas Gray. Schlicht reported that on May 15, her informant Rebecca Davis reported that she lived at plaintiff Turner's residence, and while she was there, that Turner cooked methamphetamine in a small room. Specifically, Davis said that while not allowed in that room, she was able to see enough of the room to see chemicals and a big pot on the table. (Dkt. #24-2, at 3, 13.)

Detective Olson's supplemental report on May 16 further states that Davis: (1) sent Officer Schlicht a text message saying that she saw someone come to Turner's residence and drop off items for Turner to "cook"; (2) gave officers pictures of the inside of Turner's house that showed fuel and salt; (3) provided officers with a box of materials

---

[1] The following factual summary is taken from plaintiff's pleadings, when viewed in a light most favorable to him. While Turner's complaint does not contain details about the investigation, Turner's opposition to Sheriff Waldera's motion included the police report prepared by Jackson County detective Adam Olson, as well as a transcript of one of Olson's investigatory interviews. (*See* dkts. #24-2, #24-3.) Accordingly, the court will take judicial notice of these records. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997). The court has also considered them for purposes of the pending motions because the facts related to Turner's arrest and detention at the jail are "central to his claim." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).

she took from Turner's residence that included chemicals used for making methamphetamines and other narcotics; and (4) reported that Turner told her what he needed to make another drug called "Dilaulia." (Dkt. #24-2, at 14, 15.) Detectives Olson and Gray also reported that they interviewed informant John Rose on May 16, who confirmed that Turner was making methamphetamine and another drug called "Dilaulah" at his residence. (*Id.* at 11, 16.)

In his complaint, Turner alleges that on May 17, 2016, he drove to a friends' house, but as he arrived, a police car pulled up and an officer told Turner that he could not be there. After the officer asked Turner for an I.D., he provided his drivers' license. Without a warrant, the officer then arrested Turner and transported him to the Jackson County Jail, where Detective Olson interviewed him that same day. (Dkt. # 24-2, at 19-21.)

During the interview, Turner signed a form waiving his Miranda Rights and did not object to a search of his residence. Turner also admitted that he used methamphetamine, but stated that he got it from a dealer. He also admitted to manufacturing methamphetamine, but claimed he had not done so since 1993. Turner further explained that he was actually performing experiments at his residence in an attempt to create biofuels, and that he only told other people that he was manufacturing again "to get close to them." Detective Olson found Turner's description of his (allegedly former) manufacturing process to be consistent with the types of materials that the informant had reported seeing at his residence. Finally, Turner told Olson that he personally takes 60 mg of morphine *three times* a day to address bad back issues.

The next day, May 18, a state court judge found Turner's arrest to be supported by probable cause that he had violated Wis. Stat. § 961.41(1m)e(1x), conspiracy to manufacture methamphetamine. (Dkt. #9.) Turner's complaint does not contain details about the basis for that finding, but defendant Fox attached in support of his motion to dismiss: (1) the May 18 Judicial Determination; and (2) a subsequently-filed Criminal Complaint. (*See* dkts. #9, #10.) In the Judicial Determination, the circuit court judge made the following findings:

- Detective Adam Olson, of the Jackson County Sheriff's Department, was investigating a potential methamphetamine laboratory.

- Olson concluded that Turner was manufacturing methamphetamine and possibly other narcotics at his residence.

- Olson learned that Turner had provided Kenneth Reinart with a "finished product" on May 16, 2016.

- Olson received further evidence of manufacturing from a confidential informant on May 16, 2016. The informant told Olson that chemicals used to manufacture methamphetamine and other narcotics were taken from a small locked room inside Turner's residence. The informant gave Olson pictures of that room.

- On May 16, 2016, Detective Olson interviewed informant John Rose at the Jackson County Jail. Rose told Olson that he had seen Turner manufacturing methamphetamine about two weeks prior at Turner's residence. Rose also told Olson that he had purchased pseudoephedrine for Turner.

- On May 17, 2017, a search warrant was executed at Reinart's residence, and methamphetamine, packaging materials, scales, and prescription pills were located.

- On May 17, 2017, a search warrant was executed at Turner's residence. Items located there included ephedrine, ether, stripped lithium batteries, glass funnels, glass beakers, tubing, coffee filters, methamphetamine pipes, and syringes and bags with residue of methamphetamine.

4

- Plaintiff Turner was then interviewed and would not say whether he was *currently* manufacturing methamphetamine, but admitted that he had done so in the past. He also bragged about his cooking methods, even observing that the materials he used to cook were consistent with the materials discovered in executing the search warrant.

(Dkt. #9, at 2.)

II. Turner's Arrest and Time in Jail

Once arrested and taken to the jail, Turner alleges that he was questioned and booked without phone privilege. He also alleges that despite having a morphine prescription to deal with pain experienced from old injuries for the past fourteen years, once jailed, he did not receive any morphine. As a result, Turner alleges that he began to feel morphine withdrawal symptoms the day after he was arrested, May 18, and even though his daughter brought morphine to the jail, he was not permitted to take it. That evening, Turner passed out and was taken to the Black River Memorial Hospital ("Hospital"). Turner alleges that the doctor there also would not give him anything for his morphine withdrawal; instead, the doctor gave him a "drug known to cause seizures," although Turner does not allege that he actually suffered a seizure.

After Turner was transported back to the Jackson County Jail, he continued to experience symptoms of withdrawal, which included vomiting, diarrhea, and "an inability to eat, drink or sleep." Turner alleges that he was not under any type of medical supervision for this "acute withdrawal" period, only receiving "4 Tylenol tablets over a 24 hour period." Turner was finally able to eat on May 23 and 24 of 2016, some six or seven days after his original arrest.

Turner appeared again before a judge on May 25, 2016, the same day that District Attorney Gerald Fox filed a five-count criminal complaint against him. Following that hearing, the judge released him on bond pending trial, which is is currently scheduled for trial. *State of Wisconsin v. Roger F. Turner*, Case No. 2016CF0091 (Jackson County).

OPINION

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In effect, this means that the complaint must indicate "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. When "[e]valuating the sufficiency of the complaint, [the court] construes it in the light most favorable to the non-moving party, accept[s] well-[pled] facts as true, and draw[s] all inferences in [the plaintiff's] favor." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d. 939, 946 (7th Cir. 2013).

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as Rule 12(b)(6), except that the court considers not only the complaint and referenced documents, but all pleadings, as well as documents that are incorporated into any pleading by reference. *Buchanan-Moore v. City of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009); *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir. 1991). To succeed, "the moving party must demonstrate that there are no material issues of fact to be resolved," even with the court viewing all facts in the light

most favorable to the nonmoving party. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). While the non-moving party's factual allegations are generally accepted as true in response to a 12(c) motion, "allegations in the form of legal conclusions are insufficient to survive." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (citing *McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 885 (7th Cir. 2012)).

Here, plaintiff Turner claims that his warrantless arrest and treatment in jail before this second court appearance on May 25, 2016, constituted "cruel and unusual punishment without due process." Read generously, plaintiff's complaint arguably asserts three distinct constitutional claims: (1) a Fourth Amendment challenge to his warrantless arrest; (2) a Fourteenth Amendment challenge to the medical treatment he received during his detention; and (3) a Fourteenth Amendment challenge to his eight-day detention in jail before his May 25 court appearance.[2] As Fox, Waldera and the Hospital have each moved separately for dismissal, at times on distinct grounds, the court will address each motion, and the facts, claims and defenses to that defendant in turn.

I. **Defendant Gerald Fox's Motion to Dismiss (dkt. #7)**

    A.     Abstention

As the current Jackson County District Attorney, defendant Gerald Fox rightly raises the abstention doctrine with respect to the state criminal action pending against

---

[2] Claims by *pretrial* detainees regarding deliberate indifference and conditions of confinement are governed by the due process clause of the Fourteenth Amendment. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015); *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 664 (7th Cir. 2012). However, the Seventh Circuit has applied the same standard to conditions of confinement claims under both the Eighth Amendment and Fourteenth Amendment. *See Smith v. Dart,* 803 F.3d 304, 310 (7th Cir. 2015).

7

plaintiff Turner. *State of Wisconsin v. Roger F. Turner*, Case No. 2016CF0091 (Jackson County). Indeed, the only arguable claims against District Attorney Fox concern his role in deciding to prosecute and prosecuting plaintiff, which necessarily calls into question the validity of that open criminal matter.

Abstention and non-intervention doctrines are based on traditional principles of "equity, comity, and federalism." *SKS & Assoc. v. Dart*, 619 F.3d 674, 676 (7th Cir. 2010). In that respect, *Younger v. Harris*, 401 U.S. 37 (1971), requires a federal court to abstain in cases where a federal litigant seeks to enjoin execution of a state court judgment or to interrupt ongoing state proceedings. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) ("Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained.").

Since Turner is currently awaiting trial for the criminal charges arising from his May 2016 arrest, and his claims against defendant Fox seem to relate solely to his alleged delay in filing a criminal complaint against Turner, whether or not Turner is explicitly requesting that this court *enjoin* the criminal proceeding against him, his claims certainly call into question the validity of the criminal complaint Fox filed against Turner. As such, any attempt by this court to address the merits of Turner's claim would, at least, be premature and, at worst, affect, if not interfere with, that proceeding. Accordingly, the court will abstain from exercising jurisdiction.

### B.     Absolute Prosecutorial Immunity

Even if this court chose to exercise jurisdiction over Turner's claims against District Attorney Fox, he is immune from suit with regard to his role, if any, in the

charging and prosecution of the criminal case against plaintiff. Indeed, prosecutors are entitled to *absolute* immunity for conduct associated with the judicial phase of the criminal process. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976).

While there are limits to prosecutorial immunity, the focus is on conduct. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). What matters is "the nature of the function performed." *Forrester v. White*, 484 U.S. 219, 229 (1988). A prosecutor's conduct intimately associated with the judicial phase of the criminal process -- including initiating a prosecution and in presenting the state's case -- is covered by absolute immunity. *Buckley*, 509 U.S. at 270 (citing *Imbler*, 424 U.S. at 430-31). Conversely, a prosecutor's actions of investigation or administration are not covered. *Buckley*, 509 U.S. at 270. For example, the United States Supreme Court has held that giving legal advice to the police is not covered by absolute immunity, whereas "eliciting false or defamatory testimony from witnesses or for making false or defamatory statements during, and related to, judicial proceedings" is covered. *Buckley*, 509 U.S. at 270-71 (citing *Burns v. Reed*, 500 U.S. 478, 489-90 (1991)).

Turner purports to oppose dismissal of defendant Fox based on his personal involvement in his confinement, insofar as he "was told by several jail officers during his eight day confinement that the prosecutor has to ask for him to court and that Turner was on the docket every day for court." (Dkt. #16, at 2.) Yet that argument confirms that Fox is entitled to absolute immunity. Assuming for purposes of argument that Fox was in control of the timing of Turner's first court appearance, any delay is linked to Fox's prioritizing the criminal prosecutions before his office and deciding to commence the criminal proceeding against Turner, which falls squarely within the exercise of

9

prosecutorial discretion. *See Figueroa v. United States*, 596 F. App'x 513, 515 (7th Cir. 2015) (prosecutor's delay in obtaining indictment was consistent with her role as a prosecutor and thus entitled to absolute immunity). Thus, Fox is protected by absolute prosecutorial immunity, and his motion to dismiss must be granted in any event.

II. **Defendant Duane Waldera's Motion for Judgment on the Pleadings (dkt. #21)**

Jackson County Sheriff Duane Waldera argues that he cannot be held liable on the merits of plaintiff Turner's constitutional claims, but that regardless, qualified immunity shields him from any award of monetary damages.[3] Because Waldera's arguments go to the merits of each of plaintiff's three, distinct claims, the court will address them separately.

A. **Unlawful Arrest**

Defendant Waldera did not seek dismissal of the unlawful arrest claim on abstention grounds, but the court will dismiss it on that basis all the same *sua sponte*. *See Buchel-Ruegsegger v. Buchel*, 576 F.3d 451, 453 (7th Cir. 2009) (noting that federal courts have a duty to evaluate their own jurisdiction, "sua sponte" if necessary") (citation omitted). Here, Turner opposes Waldera's motion in part based on his claim

---

[3] As an initial matter, because Turner's opposition brief was untimely, Waldera filed a Motion to Strike it from consideration. (Dkt. #28.) Courts treat *pro se* plaintiffs such as Turner with leniency, and Turner's delay appears to be an honest mistake. Accordingly, the court will deny that motion. In addition, defendant Waldera argues that the record does not support an official or individual capacity claim against him because Turner has neither challenged a jail or county policy nor alleged sufficient facts to hold Waldera individually responsible. Turner does, however, allege that Waldera knew about the investigation into Turner and had control over the jail's policies related to the availability or morphine and bringing detainees to court. Taking these allegations as true and reading them generously, the court will not dismiss Turner's deliberate indifference and due process claims at the pleading stage on this basis.

that (1) his arrest was not supported by probable cause and (2) he was not manufacturing methamphetamines. Given that Turner's upcoming criminal trial may very well involve evidence related to both the validity of the investigation into plaintiff's conduct, including his alleged, warrantless arrest, this court's resolution of Turner's constitutional challenge to his arrest carries the distinct possibility of interfering with that matter. Thus, abstention is again appropriate.[4]

B. **Deliberate Indifference**

Turner claims that Waldera's failure to permit him to receive morphine during his stay at the jail constitutes "cruel and unusual punishment." A jail official may violate a detainee's constitutional right to medical care if the official is "deliberately indifferent" to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584-85 (7th Cir. 2006). The condition does not have to be life threatening. *Id.* A medical need may be serious if it: "significantly affects an individual's daily activities," *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997); causes significant pain, *Cooper v. Casey*, 97 F.3d 914, 916-17 (7th Cir. 1996); or otherwise

---

[4] While the court makes no ruling on the merits of this claim, it is worth noting that the record suggests that Turner's arrest was supported by probable cause, and the state court record does not include a finding to the contrary. In fact, Turner himself submitted documents showing that the detectives involved in the investigation had a substantial information to support a finding of probable cause. For example, the detectives learned that: Turner's residence contained materials commonly used to manufacture methamphetamine; Turner had asked Davis to purchase materials used to manufacture methamphetamine; and Rose knew that Turner was cooking methamphetamine at his residence. While Turner argues that the statements that Davis and Rose made to the officers were not credible, he has submitted no evidence or statements that actually contradict the statements that Rose and Davis made, much less included in the state circuit court's ultimate probable cause findings.

11

subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825 (1994).

In the context of the facts here, "deliberate indifference" would mean that Sheriff Waldera was aware that the plaintiff needed medical treatment, but disregarded the risk by consciously failing to take reasonable measures. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Thus, under this standard, plaintiff's claim for denial of medical and mental health care has three elements:

(1) Did plaintiff need medical treatment?

(2) Did defendant Waldera know that plaintiff needed treatment?

(3) Despite his awareness of the need, was defendant Waldera consciously failing to take reasonable measures to provide the necessary treatment? *Id*.

Assuming for purposes of this motion that Turner actually did need medical treatment, as his allegations would support, the record still does not support a finding that Waldera was involved in Turner's day to day treatment, nor that he even knew Turner had asked for morphine. Instead, Turner argues that Waldera, as sheriff, had ultimate control over the list of permissible medications, and thus could have provided him morphine during his stay.

Construing plaintiff's claim against Waldera in his official capacity, it must be dismissed. An official capacity claim against an individual defendant constitutes a claim against the government entity itself, and the Eleventh Amendment precludes a citizen from suing a state for money damages in federal court without the state's consent. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). Here, Turner is seeking *only* monetary

damages, since he is no longer being held at the jail. Accordingly, his official capacity claim against Waldera must be dismissed.

In this case, dismissal is also appropriate if construed as a claim against Waldera in his individual capacity. A supervisor may be liable if he knew about unconstitutional "conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what [she] might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (citation omitted). Additionally, a supervisor might be liable for flawed policies or deficient training, over which the supervisor had control, if the policies or training amount to deliberate indifference to the rights of the persons affected by the policies or inadequate training. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

Even assuming Turner is correct that Sheriff Waldera controlled the list of medications available to detainees at the jail, the absence of morphine from that list does not amount to deliberate indifference, at least on these facts. While Turner has certainly credibly pleaded the very unpleasant symptoms of morphine withdrawal, he has not alleged facts suggesting that jail staff *had* to provide him with morphine to avoid violating his constitutional rights. Rather, the jail was obligated to provide "adequate medical care." *Holloway*, 700 F.3d at 1073. Here, Turner was transported to the hospital and received treatment; the nurse told Turner she could not give him morphine because it was not approved; and Turner received "4 Tylenol tablets over a 24 hour period."[5] Turner may disagree with the policy, but he was delivered to medical staff, who evaluated

---

[5] Turner made this statement in his signed opposition brief, which the court considers for purposes of Waldera's motion because the statement is not inconsistent with Turner's allegations in his complaint. *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997) ("[F]acts alleged in a brief in opposition to a motion to dismiss … as well as factual allegations contained in other court filings of a *pro se* plaintiff may be considered when evaluating the sufficiency of a complaint so long as they are consistent with the allegations of the complaint.").

him and apparently concluded that treatment other than administering morphine would be sufficient, and jail staff were entitled to defer to that conclusion. *Seee Froiseth v. County of La Crosse*, No. 05-470, 2006 WL 123674 at *13 (W.D. Wis. May 1, 2006) (acknowledging Eighth Amendment standard permitting non-medical jail officials to defer to decisions made by medical personnel.) Moreover, there is no indication that other, stronger arguably more effective medications to treat his symptoms were precluded by the jail. Finally, Turner's symptoms and experience do not suggest that the policy denying Turner morphine was outside of the "range of acceptable courses" of treatment, much less blatantly inappropriate. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *see Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("A prisoner may establish deliberate indifference by demonstrating that the treatment he received was 'blatantly inappropriate.'") (citing *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005)). Accordingly, Turner's Fourteenth Amendment claim related to his medical care will be dismissed.[6]

C. Due Process

As Turner's probable cause finding was held the day after his arrest, his due process claim also falls under the Fourteenth Amendment. *Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir. 2012) ("the Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination

---

[6] What Turner does not plead, and the court cannot fairly infer, is that the approved drug list prevented the hospital from prescribing other medication to ease Mr. Turner's pain and suffering due to withdrawal from morphine. Even if that were true, Turner has not sufficiently alleged that Sheriff Waldera was personally involved in arriving at the approved list of medications, as opposed to deferring to a medical expert, as he would have every right to do. Were Turner able to plead both, he *might* have a claim against Sheriff Waldera and, therefore, is welcome to move to reconsider, providing a new pleading addressing these deficiencies.

of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause"). "When a plaintiff brings a § 1983 claim under the Due Process Clause, 'the question is whether an executive abuse of power shocks the conscience.'" *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1068-69 (7th Cir. 2012). To support such a claim, the plaintiff "must put forth evidence to establish that the defendant intentionally or recklessly deprived him of a constitutional right." *Id.* at 1069.

In challenging his eight-day detention by Jackson County, plaintiff argues that the policy "to submit the names of confinees to the court and then wait for the court to schedule a hearing is a policy flaw," and that defendant Waldera, as sheriff, was in a position to ensure that his constitutional rights were not violated. The application of that policy to plaintiff Turner, however, resulted in a total eight-day detention period. Moreover, one day after his arrest, he was presented to a judge who concluded that plaintiff's arrest was supported by probable cause. Additionally, the pleadings and incorporated documents establish that during the seven days between his probable cause hearing on May 18 and his charging hearing on May 25, the investigation into Turner's potential crimes was ongoing. Nor does Turner allege any facts suggesting that his eight-day detention was the product of purposeful delay or otherwise involved incidents that would "shock the conscience." This eight-day delay is, therefore, simply an insufficient basis to support a due process claim.

Turner's varied arguments do not suggest otherwise, and all but one of the cases that he cites do not involve a due process claim. In particular, Turner cites a Ninth Circuit decision, *Oviatte v. Pearce*, 954 F.2d 1470 (9th Cir. 1992), in which the court of

appeals held that a *114*-day delay before arraignment was the result of a municipal policy that violated due process. *Id*. at 1472. Obviously, this decision is not controlling, but it is unpersuasive, given that Turner's detention lasted only eight days.

Indeed, the Seventh Circuit concluded as much in *Holloway*. In *Holloway*, the plaintiff had also been arrested without a warrant and detained in a county jail. 700 F.3d at 1068-69. The day after Holloway's arrest, he was the subject of a probable cause determination, and he made an initial appearance in front of a judicial officer within three days of his arrest. Ultimately, however, Holloway was detained for a total of nine days before charges were formally filed against him. *Id.* at 1068. Moreover, during this detention period, Holloway was under the care of the jail's medical staff, who decided against administering him Oxycontin during his time in jail, even though Holloway had been prescribed it to treat chronic pain. *Id.* Still, the court explicitly concluded that "nine days in jail without being charged with a crime [did not] violate the Due Process Cause of the Fourteenth Amendment." *Id.*

As for the sheriff's conduct in Holloway, the court explained that the evidence showed the sheriff in that case brought Holloway to the court for an initial hearing within an appropriate period of time and released him when the court ordered Holloway's release. There is even less to hold Sheriff Waldera responsible for here since he appears to have been wholly uninvolved personally in the decisions to arrest or hold plaintiff. Rather, Turner was held in jail for only eight days before he was charged with a crime; during that time, a judge concluded that the arrest was supported by probable cause, and Turner was released on bond after he appeared before the judge again. As already acknowledged, while Turner did suffer from morphine withdrawal, the complaint

and related documents indicate that he received medical treatment to address his withdrawal. His experience simply is not of the type that would support a finding that the jail's policy shocks the conscience, nor that he otherwise suffered from a reckless disregard of his constitutional rights. As such, the jail's policy that resulted in a seven-day delay between a hearing on probable cause and a detention hearing did not violate Turner's due process rights.

III. Black River Falls' Motion for Judgment on the Pleadings (dkt. #25)

Finally, like Sheriff Waldera, defendant Black River Falls Hospital seeks judgment on the pleadings. The hospital correctly points out that as building, it is not a suable entity under § 1983. *See Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). Furthermore, the clerk's office set April 3, 2017, as Turner's opposition deadline, but he filed no brief or other materials in response to the hospital's motion. During that timeframe, Turner filed other materials with the court, including materials in opposition to two other dispositive motions. As he never sought additional time for an opportunity to respond to the Black River Falls Hospital's motion, or even proffer any argument that suggests that he opposes that motion, the court has concluded that Turner has conceded its merit and will grant it. *Alioto v. Town of Lisbon*, 651 F.3d 715, 718 (7th Cir. 2011) ("As to defendants' motion to dismiss the complaint, Alito waived his right to contest the dismissal by failing to oppose the motions.").

ORDER

IT IS ORDERED that:

(1)     Defendant Gerald Fox's Motion to Dismiss (dkt. #7) is GRANTED.

(2)     Defendant Duane Waldera's Motion for Judgment on the Pleadings (dkt. #21) is GRANTED.

(3)     Waldera's Motion to Strike (dkt. #28) is DENIED.

(4)     Black River Falls' Motion for Judgment on the Pleadings (dkt. #25) is GRANTED.

(5)     The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered this 1st day of December, 2017.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge